UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRAVIS CLINTON COLEMAN , <br><br> Plaintiff, <br><br> v. <br><br> C. MERRITT, et al., <br><br> Defendant. | CASE NO. 2:24-cv-01566-JCC-BAT <br><br> **REPORT AND RECOMMENDATION** |

Plaintiff Travis Clinton Coleman proceeds *pro se* and *in forma pauperis*, in this civil rights action pursuant to 42 U.S.C. § 1983. Dkts. 4, 5. Plaintiff alleges Defendants, employees at King County Correctional Facility ("KCCF"), violated his rights by using excessive force, providing inadequate medical care, and failing to provide a hearing, chance to appeal, or due process prior to placing Plaintiff in restrictive housing for disciplinary reasons. Dkt. 5. Currently pending before the Court is Defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 36. Plaintiff did not file opposition to the motion to dismiss.[1]

---

[1] The Court notes that Defendants filed their motion to dismiss on February 12, 2025. Dkt. 36 On February 11, 2025, Plaintiff mailed a notice of change of address, received by the Court on February 13, 2025, notifying the Court that he had been released from jail and providing the Court with his new address. Dkt. 38. On March 11, 2025, Defendants filed a reply to the motion to dismiss in which they state that upon receiving the February 13, 2025, notice of change of address by Plaintiff, they re-served a copy of the motion to dismiss to Plaintiff at his newly provided address. Dkt. 41.

REPORT AND RECOMMENDATION - 1

For the reasons below, the Court recommends that Defendants' motion to dismiss (Dkt. 36) be GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff alleges he was a pretrial detainee at the KCCF at the time he filed his complaint and at the time of the events that give rise to his claims. Dkt. 5. Plaintiff's complaint names the following as Defendants: C. Merritt, Corrections Officer, KCCF; L. Arias, Corrections Officer, KCCF; G. Robinson, Corrections Officer Supervisor, KCCF; R. Prioleau, Classifications Staff, KCCF; R. Kintner, Classifications Staff Supervisor, KCCF; I. Idiong, Classifications Staff, KCCF; Hurt, Classifications Staff, KCCF. Dkt. 5.

In Count I of his complaint Plaintiff alleges "the three named officers" used excessive force against him. Dkt. 5 at 6-7. Construing the complaint liberally, the Court understands Plaintiff to be referring to Defendants Merritt, Arias and Robinson in this count. *Id.* Plaintiff alleges that on August 10, 2024, after being transported from the hospital after undergoing a "spinal fusion of C/5 C/6", he was removed from the stretcher/rolling bed and "violently assaulted and stripped naked." *Id.* Plaintiff alleges the following:

> The group of them pushed me to the back of the cell, tried to ram my knees into the bench. I stepped up to avoid injury. Then they yanked me down backwards. I landed on my feet at which point one of them kicked my left foot forward causing me to do the splits at which point the three of them fell on top of me, hyperextending my left leg directly in front of me, with my right curled back behind, smashing my torso flat, directly with my hyperextended left leg. I went into shock and could not feel my left leg and could not breath. They then violently contorted my body, stripping me naked, which I feel constitutes sexual assault. My naked body was exposed and smashed into the floor of the unwashed cell. I observed hair, what appeared to be dried feces, and food particles and pieces all over the floor. The form of the incident they filled out saying "observed or reported injuries" they check "no," despite my being SEVERELY injured. I was not able to get up for several minutes and may have lost consciousness when my head was slammed into the floor next to my leg. I was given no socks or shoes and didn't receive any sandals or slippers for 4 days. I was also not given toilet

REPORT AND RECOMMENDATION - 2

paper or any food for 18+ hours, until I was relocated and fed breakfast the next day.

*Id.*

Plaintiff alleges medical staff observed the assault but provided no medical care and later partially documented his severe leg and ankle injuries. *Id.* Plaintiff alleges his leg turned bloody black, blue, and purple, that hardened torn muscle and possibly tendon could be felt down the back of his thigh and he was peeing blood. *Id.*

In Count II, Plaintiff alleges that "medical staff" who "refused to identify herself" gave him no medical help and refused to get him food or toilet paper. *Id.* at 8-9. He alleges "medical staff" came and asked about his injuries and current medications and he told her that he was severely injured and couldn't feel part of his leg, had a cervical spine fusion, previous knee and shoulder surgery, suffered from migraines and chronic pain related insomnia, has a bi-lateral "ingual hernia mesh repair surgery", as well as a mental health history and medications. *Id.*

Plaintiff states that "they" ordered ice packs for a week and then discontinued the order. *Id.* He alleges they provided no pain medication and refused to provide his current prescribed medication. *Id.* Plaintiff alleges an "MD" – "a bald dark skinned Asian man" -- came to his cell a week later and poked at his leg through the cuff port for an examination but refused to take pictures of the injury. *Id.* He alleges the "MD" said he would order a padded wedge to support his injury, but medical staff later refused to provide this claiming it was not ordered. *Id.* Plaintiff indicates he was provided an extra blanket which was insufficient. *Id.*

Plaintiff alleges medical staff also ordered medication he was allergic to three times. *Id.* He states that he previously had renal failure from NSAIDs and this was in his

REPORT AND RECOMMENDATION - 3

1  chart but that he as prescribed Ibuprofin, Naproxen and Tylenol all of which he is allergic

2  to and that this has been in his chart for years. *Id.* He alleges medical staff eventually

3  gave him lidocaine gel but that this was insufficient and that they continued to refuse to

4  provide pain medication. *Id.* Plaintiff alleges as a result he suffered severe pain,

5  sleeplessness, severe trauma, and he was already diagnosed with PTSD and major

6  depressive anxiety disorder, and that this has amplified these conditions. *Id.*

7       In Count III, Plaintiff alleges he was "punished by an unnamed individual in

8  classifications staff for being assaulted …[and] was given no hearing, no chance to

9  appeal, no due process." *Id.* at 9-11. Plaintiff states a one-page document was slipped

10 under his cell door informing him that he was being placed in restrictive housing and that

11 he would have a chance to appeal the decision within 7 days. *Id.* He states he was never

12 given a disciplinary hearing or chance to appeal and that all kites to classification (green

13 kites) regarding the matter were ignored. *Id.* He states "they" also did the same thing two

14 more times – not providing a hearing or chance to appeal. *Id.* He alleges one of the forms

15 he was given had no victim statement or named victim or alleged violation, just what

16 punishment he would be receiving. *Id.*

17      Plaintiff states that "[t]hey and the operations staff" have completely refused to

18 reply or return a single grievance (white form) he has filed since August 10. *Id.* He

19 alleges he has also sent 3 green kites requesting the ADA coordinator and disability

20 accommodation because he is disabled and receiving Social Security which have been

21 ignored. *Id.* He alleges he has attempted to contact the county Ombudsman but has not

22 received an answer. *Id.*

23

REPORT AND RECOMMENDATION - 4

Plaintiff contends he has suffered psychological trauma and suffering due to non-stop solitary confinement without justification and no access to the commissary. *Id.*

Plaintiff states he believes "this happened" because there is almost no surveillance and he was told the "hole" where he was moved is not recorded, only monitored. *Id.* As relief he asks the county to "rectify their policies to create accountability" and for legal counsel to help with "PDRs" as well as $800,000.00 for medical expenses and suffering. He states he feels his safety is at severe risk. *Id.*

Defendants have filed a motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that Plaintiff fails to state a claim upon which relief can be granted and based on the defense of qualified immunity. Dkt. 36. Plaintiff did not file any opposition or otherwise respond to the motion.

## STANDARD OF REVIEW

A motion to dismiss can be granted only if a plaintiff's complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556, 570).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted).

REPORT AND RECOMMENDATION - 5

However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

While the Court must accept all the allegations contained in the complaint as true, the Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court is to construe a complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or omitting to perform an act which is legally required. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

## DISCUSSION

REPORT AND RECOMMENDATION - 6

A.     **Count I**

In Count I Plaintiff alleges Defendants engaged in excessive force violating his rights when:

> [t]he group of them pushed me to the back of the cell, tried to ram my knees into the bench. I stepped up to avoid injury. Then they yanked me down backwards. I landed on my feet at which point one of them kicked my left foot forward causing me to do the splits at which point the three of them fell on top of me, hyperextending my left leg directly in front of me, with my right curled back behind, smashing my torso flat, directly with my hyperextended left leg…. They then violently contorted my body, stripping me naked, which I feel constitutes sexual assault. … I was not able to get up for several minutes and may have lost consciousness when my head was slammed into the floor next to my leg.

Dkt. 5 at 6-7.

The Fourteenth Amendment Due Process Clause protects pretrial detainees from excessive force. *Kingsley v. Hendrickson,* 135 S.Ct. 2466, 2470 (2015). To prevail on such a claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 2473. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case,'" without regard to the officers' underlying intent or motivation. *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Court must weigh the circumstances from the viewpoint of a reasonable officer at the scene and "account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (internal quotation and citation omitted). In assessing reasonableness, the Court may consider the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Id.*

Accepting Plaintiff's allegations as true, as the Court must at this stage of the proceedings, Plaintiff has stated sufficient facts to state a claim that Defendants' actions, under the circumstances, constituted excessive force. Plaintiff alleges Defendants pushed him, yanked him backwards, kicked his foot out from under him causing him to do the splits and then all three Defendants fell on top of him causing his leg to hyperextend and his head to slam into the floor. The only arguable form of resistance Plaintiff alleges he took was to step up to avoid Defendants slamming his knees into a bench. In addition, the Court may also consider the extent of Plaintiff's injuries, which, according to the allegations of the complaint, were significant. Specifically, Plaintiff alleges he may have lost consciousness when his head was slammed into the floor and that his leg turned bloody black, blue, and purple, that hardened torn muscle and possibly tendon could be felt down the back of his thigh and he was peeing blood.

Defendants argue that Plaintiff has failed to state a claim because he fails to identify which specific action each individual Defendant took in "assaulting" him. Dkt. 36. But "that degree of factual specificity is not required at the pleading stage." *Torres v. Baca*, No. CV13-3430-RGK (AS), 2015 WL 13905626, at *6 (C.D. Cal. Jan. 9, 2015) (denying motion to dismiss where complaint did not identify "which Defendant delivered each blow to Plaintiff's face"); *Lolli v. Cnty. of Orange*, 351 F.3d 410, 417−18 (9th Cir. 2003) (holding that an excessive force claim survived summary judgment, "[e]ven though [the plaintiff] [had] not been able to identify precisely which officer delivered which alleged blow or use of force"); *Amon Ra v. Cochise Cnty.*, 442 Fed. App'x 286, 286 (9th Cir. 2011) (finding Fourth Amendment excessive force claim survived dismissal, notwithstanding the plaintiff's failure to attribute specific conduct to each defendant).[2]

---

[2] Defendants also note that Plaintiff attaches a Rule Infraction Report/Behavior Modification Report which contains the Defendants' version of events and states that during the incident Plaintiff was yelling

REPORT AND RECOMMENDATION - 8

The Court finds that Plaintiff states a colorable excessive force claim and recommends that the motion to dismiss be denied as to this claim.

**B.     Count II**

In Count II, Plaintiff alleges "medical staff" failed to provide him with adequate medical care. But Plaintiff fails to allege personal participation in this alleged violation by any named Defendant or identified individual.

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege facts showing how a defendant caused or personally participated in causing the harm alleged in the complaint. *Leer*, 844 F.2d at 633; *Arnold*, 637 F.2d at 1355. A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or omitting to perform an act which is legally required. *Johnson*, 588 F.2d at 743. Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Leer*, 844 F.2d at 633.

Here, Plaintiff makes allegations against "medical staff" but fails to identify any individual whom he alleges violated his rights. Nor does Plaintiff connect any of his allegations in this count to any of the named Defendants. Plaintiff also does not identify any of the named Defendants in the complaint as members of the medical staff.

Accordingly, Plaintiff has failed to allege personal participation or state a claim against the Defendants in Count II. Further, because Plaintiff did not respond to Defendants' motion to dismiss and connect any of the named Defendants to the allegations in Count II or seek to add new Defendants connected to these allegations, the Court cannot determine whether amendment

---

threats and actively resisting attempts to restrain him. Dkt. 36; Dkt. 5 at 13. But the Court is required to accept Plaintiff's allegations as true at this stage of the proceedings. Thus, the fact that the Defendants' version of events differs from Plaintiff's allegations is not a sufficient basis to dismiss Plaintiff's claim.

REPORT AND RECOMMENDATION - 9

could remedy this deficiency. Therefore, the Court recommends granting Defendants' motion to dismiss and dismissing Count II without prejudice.

C.  **Count III**

In Count III, Plaintiff alleges his rights were violated because he was not given a disciplinary hearing or an opportunity to appeal his placement in restrictive housing. But Plaintiff fails to connect any of the named Defendants with his allegations. Thus, Plaintiff fails to allege personal participation in the alleged violations by any named Defendant.

Furthermore, Plaintiff attaches several documents to his complaint that appear to contradict the allegations in Count III.

Plaintiff attaches a document entitled Restrictive Housing Placement (dated August 10, 2024) which states that Plaintiff was placed in restrictive housing for the following reasons:

> Due to your poor behavior history, your uncooperative behavior and your threats toward staff. You are being assigned to Max Security Restrictive housing. You will have the ability to appeal this decision within 7 days. Keep in mind, until your behavior improves you will not be removed from Restrictive housing.

Dkt. 5 at 12. The document states Plaintiff's status will be reviewed on August 17, 2024, and is signed by Defendant Prioleau. *Id.*

Plaintiff also attaches a document entitled Subject Disciplinary Hearing form for incident number 1019328, which occurred on August 10, 2024. *Id.* at 16. This document reflects a hearing date of August 12, 2024, and notes that Plaintiff's statement in his defense was "[y]ou don't tell me what I can say or cannot say you Bitch. Fuck you Bitch!" *Id.* The document is signed by Defendant Idiong as the hearing officer and reflects a guilty finding for the violations of physical resistance, refusing orders/safety & security issue, threats, and verbal and non-verbal abuse directed at staff. *Id.* The document provides that Defendant Idiong's decision upholding the sanction of disciplinary segregation is based upon the "Officer's report" and the Plaintiff's

REPORT AND RECOMMENDATION - 10

1  "verbal statement full of abusive epithets toward the CPS." *Id.* The document also states that
2  Plaintiff did not wish to file an appeal regarding this incident. *Id.*

3  Plaintiff also attaches another document entitled Subject Disciplinary Hearing which
4  reflects that Plaintiff had another disciplinary hearing on August 19, 2024, for incident number
5  1019546, which occurred on August 18, 2024. *Id.* at 18. This document reflects that Plaintiff was
6  found guilty of the infraction by non-defendant hearing officer J. Julius, based on Plaintiff's
7  guilty plea and a review of the officer's report by the hearing officer. *Id.* The document notes
8  that this was Plaintiff's second infraction within 8 days for the same conduct— threats and
9  verbal/non-verbal abuse. *Id.* Another document is attached related to this same incident number
10 that states that Plaintiff did not wish to file an appeal regarding this incident. *Id.* at 19.

11 Plaintiff also attaches another document entitled Subject Disciplinary Hearing form
12 which reflects that Plaintiff had another disciplinary hearing on August 25, 2025, for incident
13 1019636, which occurred on August 23, 2024. *Id.* at 20. This document reflects that Plaintiff
14 "verbally pled not guilty to the cited rule violations and provided a written statement that was
15 scanned and uploaded. [Plaintiff] wrote his subject statement on a grievance report and asked
16 that it could be used for his disciplinary hearing response. The grievance report was scanned and
17 the original report was returned to him." *Id.* This document reflects that Plaintiff was found
18 guilty of the infraction by Defendant J. Hurt as hearing officer and that this finding was "based
19 on the preponderance of the evidence (the officer's written testimony, your provided statement
20 and the definitions of the rule descriptions as defined in the Inmate Information Handbook).
21 After reviewing [Plaintiff's] provided response, he did not address the allegations of verbal abuse
22 or threats that are noted in the rule infraction report. Sanctioned within the presumptive range to
23 5 days disciplinary deadlock." *Id.*

REPORT AND RECOMMENDATION - 11

Another document is attached related to this same incident number (1019636) which reflects that Plaintiff submitted an appeal which was "scanned under the documents section of this disciplinary hearing." *Id.* at 15. The document contains a "supervisor appeal response" from R. Kintner stating "Defendant Colman, you offer no rebuttal in your written appeal countering the actions of your behavior described in the infraction report as written by C/O Ibanga. *Id.* Therefore, I am unable to justify either a modification or revocation of CPS Hurt's disciplinary conclusion and its sanction; appeal denied." *Id.*

These documents, included as attachments to Plaintiff's own complaint, appear to contradict Plaintiff's allegations in Count III that he was not provided hearings for his infractions. They also reflect that, contrary to the allegations of his complaint, he did submit an appeal with respect to one of the hearings and declined to appeal with respect to the two other hearings.

Because Plaintiff did not respond to Defendants' motion to dismiss and directly connect any of the named Defendants to the allegations in Count III or explain any of the apparent inconsistencies between the allegations in his complaint and the attached documents, the Court cannot determine whether amendment could remedy these deficiencies. Therefore, the Court recommends granting Defendants' motion to dismiss and dismissing Count III without prejudice.

**D.    Qualified Immunity**

Defendants also argue that Plaintiff's claims should be dismissed because Defendants are entitled to qualified immunity. Dkt. 36. With respect to Counts II and III, the Court has already recommended dismissal as Plaintiff fails to state a claim upon which relief may be granted. Accordingly, the Court does not reach the issue of qualified immunity with respect to Counts II

1  and III. Thus, the Court will address Defendants' qualified immunity defense with respect to
2  Count I only.
3  When defendants assert qualified immunity in a motion to dismiss under Fed. R. Civ. P.
4  12(b)(6), "'dismissal is not appropriate unless [the Court] can determine, based on the complaint
5  itself, that qualified immunity applies.'" *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016)
6  (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)). Although a defendant is
7  entitled to raise qualified immunity in a motion to dismiss, generally speaking, it is better
8  addressed in the context of a motion for summary judgment. *See Wong v. United States*, 373 F.3d
9  952, 956-57 (9th Cir. 2004) (noting it is difficult for courts to decide qualified immunity at the
10 motion to dismiss stage because it forces the Court to decide "far-reaching constitution questions
11 on a nonexistent factual record," and suggesting the issue is better left for summary judgment).
12 Thus, if the Court determines dismissal is not appropriate, the Court may deny a qualified
13 immunity defense without prejudice and allow a defendant to re-raise the defense after further
14 factual development at summary judgment or trial. *See Morley v. Walker*, 175 F.3d 756, 761 (9th
15 Cir. 1999).
16 In determining whether an official is entitled to qualified immunity, a court must
17 determine whether, reading the allegations in the light most favorable to the Plaintiff: (1)
18 Defendant's conduct violated a constitutional right; and (2) the right was clearly established.
19 *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A Court may address the steps of the qualified
20 immunity analysis in whichever order it finds most expedient. *Pearson v. Callahan*, 555 U.S.
21 223, 236 (2009). The second step of the qualified immunity analysis provides that defendants are
22 entitled to qualified immunity if their conduct "does not violate clearly established statutory or
23 constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982). Plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation; if the plaintiff meets this burden, then the defendant bears the burden of establishing that the defendant reasonably believed the alleged conduct was lawful. *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Trevino v. Gates*, 99 F.3d 911, 916-17 (9th Cir. 1996); *Browning v. Vernon*, 44 F.3d 818, 822 (9th Cir. 1995); *Neely v. Feinstein*, 50 F.3d 1502, 1509 (9th Cir. 1995), *overruled in part on other grounds by L.W. v. Grubbs*, 92 F.3d 894 (9th Cir. 1996); *see also Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011) ("The plaintiff bears the burden to show that the contours of the right were clearly established.").

  The Court has already determined that dismissal is not appropriate with respect to Count I because Plaintiff has alleged sufficient facts to state an excessive force claim against Defendants Merritt, Arias, and Robinson. Furthermore, the Court cannot conclude here, based solely upon the complaint itself and without further factual development, that qualified immunity applies. The Court notes that Ninth Circuit has held that "it is clearly established that officers cannot use intermediate force when a suspect is restrained, has stopped resisting, and does not pose a threat." *Hyde v. City of Willcox*, 23 F.4th 863, 873 (9th Cir. 2022); *see Piazza v. Jefferson Cnty., Alabama*, 923 F.3d 947, 953 (11th Cir. 2019) ("[w]hen jailers continue to use substantial force against a prisoner who has clearly *stopped resisting*—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive."); *and see Andrews v. City of Henderson*, 35 F.4th 710, 716 (9th Cir. 2022) ("A physical tackle that results in severe injury may constitute a significant use of force.").

REPORT AND RECOMMENDATION - 14

Accordingly, the Court recommends denying Defendants' motion to dismiss based upon their qualified immunity defense without prejudice and allowing Defendants to re-raise the defense after further development of the record.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Defendants' motion to dismiss (Dkt. 36) be GRANTED in part and DENIED in part. The Court should grant the motion to dismiss with respect to Plaintiff's claims in Counts II and III and should dismiss those claims without prejudice. The Court should deny the motion to dismiss with respect to Plaintiff's claims in Count I and should further deny Defendants' qualified immunity defense without prejudice to Defendants' re-raising the defense after further development of the record.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case. Objections, however, may be filed and served upon all parties no later than **May 6, 2025.** The Clerk should note the matter for **May 9, 2025**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. The failure to timely object may affect the right to appeal.

DATED this 22nd day of April 2025.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15