1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TRAVIS CLINTON COLEMAN ,

                            Plaintiff,

        v.

C. MERRITT, et al.,

                            Defendant.

CASE NO.  2:24-cv-01566-JCC-BAT

**ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

13

14

15

16

17

18

    Plaintiff Travis Clinton Coleman, proceeding *pro se* and *in forma pauperis*, filed this

civil rights case pursuant to 42 U.S.C. § 1983. Dkts. 1, 4, 5. Presently pending before the Court is

Defendants' motion for summary judgment. Dkt. 47. After reviewing the relevant record, for the

reasons below, Defendants' motion (Dkt. 47) is granted and Plaintiff's remaining claims –

contained in Count I – are dismissed with prejudice. As all other claims were previously

dismissed (Dkt. 45) and no claims remain in this action, the Clerk is directed to close the case.

19

### BACKGROUND

20

21

22

23

    In his unverified complaint, Plaintiff alleges he was a pretrial detainee at the King County

Correctional Facility ("KCCF") at the time he filed his complaint and at the time of the events

that give rise to his claims. Dkt. 5. Plaintiff's complaint names the following as Defendants: C.

Merritt, Corrections Officer, KCCF; L. Arias, Corrections Officer, KCCF; G. Robinson,

1   Corrections Officer Supervisor, KCCF; R. Prioleau, Classifications Staff, KCCF; R. Kintner,

2   Classifications Staff Supervisor, KCCF; I. Idiong, Classifications Staff, KCCF; Hurt,

3   Classifications Staff, KCCF. Dkt. 5. Plaintiff's complaint originally alleged three causes of

4   action – Counts I, II, and III. *Id.* On February 12, 2025, Defendants moved to dismiss Plaintiff's

5   complaint. Dkt. 36. By order dated May 13, 2025, the Court granted the motion to dismiss with

6   respect to Counts II and III and dismissed those claims without prejudice but denied the motion

7   to dismiss with respect to Count I. Dkt. 45. Accordingly, currently, Count I is the only count

8   remaining in this action and Defendants Merritt, Arias, and Robinson are the only remaining

9   Defendants.

10          In Count I of his complaint Plaintiff alleges "the three named officers" used excessive

11  force against him. Dkt. 5 at 6-7. Construing the complaint liberally, the Court understands

12  Plaintiff to be referring to Defendants Merritt, Arias and Robinson in this count. *Id.* Plaintiff

13  alleges that on August 10, 2024, after being transported from the hospital after undergoing a

14  "spinal fusion of C/5 C/6", he was removed from the stretcher/rolling bed and "violently

15  assaulted and stripped naked." *Id.* Plaintiff alleges the following:

16          The group of them pushed me to the back of the cell, tried to ram my knees into the
            bench. I stepped up to avoid injury. Then they yanked me down backwards. I landed on
17          my feet at which point one of them kicked my left foot forward causing me to do the
            splits at which point the three of them fell on top of me, hyperextending my left leg
18          directly in front of me, with my right curled back behind, smashing my torso flat, directly
            with my hyperextended left leg. I went into shock and could not feel my left leg and
19          could not breath. They then violently contorted my body, stripping me naked, which I
            feel constitutes sexual assault. My naked body was exposed and smashed into the floor of
20          the unwashed cell. I observed hair, what appeared to be dried feces, and food particles
            and pieces all over the floor. The form of the incident they filled out saying "observed or
21          reported injuries" they check "no," despite my being SEVERELY injured. I was not able
            to get up for several minutes and may have lost consciousness when my head was
22          slammed into the floor next to my leg. I was given no socks or shoes and didn't receive
            any sandals or slippers for 4 days. I was also not given toilet paper or any food for 18+
            hours, until I was relocated and fed breakfast the next day.

23  *Id.*

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 2

Plaintiff alleges medical staff observed the assault but provided no medical care and later partially documented his severe leg and ankle injuries. *Id.* Plaintiff alleges his leg turned bloody black, blue, and purple, that hardened torn muscle and possibly tendon could be felt down the back of his thigh and he was peeing blood. *Id.*

Plaintiff states he believes the events alleged in his complaint "happened" because there is almost no surveillance and he was told the "hole" where he was moved is not recorded, only monitored. *Id.* at 11. As relief he asks the county to "rectify their policies to create accountability" and for legal counsel to help with "PDRs" as well as $800,000.00 for medical expenses and suffering. *Id.* He states he feels his safety is at severe risk. *Id.*

The Court notes that on February 13, 2025, Plaintiff filed a notice of change of address with the Court indicating that he had been released from custody. Dkt. 38.

Defendants now move for summary judgment seeking to dismiss the remaining claims – contained in Count I. Dkt. 47. Plaintiff has filed a letter in opposition to the motion. Dkt. 56. Defendants have filed a reply. Dkt. 57.

## STANDARD OF REVIEW

**A.    Summary Judgment**

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of

fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

Under Fed. R. Civ. P. 56(c),

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56

"An affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Only sworn affidavits – or unsworn declarations that are, *inter alia*, subscribed under penalty of perjury, pursuant 28 U.S.C. § 1746 – satisfy the requirement of Rule 56(c)(4)." *Young v. Allstate Company*, CV 20-04048, 662 F.Supp.3d 1066, 1073 (C.D. Cal. 2023) (citing *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995) and *Silverman v. Mendiburu*, 785 F. App'x 460 (9th Cir. 2019)). Furthermore, while a verified complaint may be used as an

opposing affidavit under Rule 56 to the extent it expresses personal knowledge of admissible facts, an unverified complaint is insufficient to counter a summary judgment motion supported by affidavits or sworn declarations. *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985). The nonmoving party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); Fed. R. Civ. P. 56(c), (e).

"On summary judgment the inferences to be drawn from the underlying facts contained in [the material submitted with respect to the motion] must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *and see id.* at 380-81 ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.") (emphasis added).

## B.    42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the conduct complained of was committed by a person acting under color of state law, and (b) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *See Haygood v. Younger*, 769 F.2d

1350, 1354 (9th Cir. 1985). The first step in a § 1983 claim is to identify the specific

constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To satisfy

the second prong, a plaintiff must allege facts showing how individually named defendants

caused, or personally participated in causing, the harm alleged in the complaint. *See Leer v.*

*Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Leer*,

844 F.2d at 633.

## EVIDENCE

Defendants have submitted video of the incident, interrogatory responses, staff incident

reports from Defendants Merritt and Arias, the declaration of Defendant Robinson, the

declaration of Gertrudiz Codero-Nieves, the declaration of records custodian Tyler Entrekin,

photographs of Plaintiff taken 10 minutes after the incident, and Plaintiff's medical records from

July 10, 2019, August 10, 2024, and August 11, 2024. Dkt. 48 at 36-43 (Exs. F, G, H). Plaintiff

submitted a letter in opposition to the motion. Dkt. 56.

A staff incident report completed by Defendant Merritt states:

> While working in booking on 8-10-2024 at approximately 1435 hours Inmate
> Coleman, Travis… came into the pre-book counter on an AMR gurney uncooperative.
> Inmate Coleman refused to answer most medical questions and refused to let RN Marina
> take heart rate by flicking off the heartrate monitor. RN Marina cleared Inmate Coleman
> to stay. Sergeant Robinson asked if Inmate Coleman could dress himself out and he said
> "I would like to see you try and get my clothes off you fat faggot! I will violently attack
> you!"
> While being escorted on AMR's gurney to side cell #9 Inmate Coleman said "I'll
> kill you all! We're in jail so it's not a crime!" Once Inmate Coleman was in front of cell
> #9 his soft restraints were removed from his hands, and I handcuffed them behind his
> back. Inmate Coleman's soft ankle restraints were removed, and I helped him to his feet
> while holding his left arm. I escorted Inmate Coleman to the back of the cell, and he
> immediately resisted pushing back on me. I directed Inmate Coleman to face the back
> wall and not to turn on me. Inmate Coleman immediately jumped up onto the bench and I
> pushed forward on his left arm and upper left shoulder forcing him down to the ground. I
> then switched to Inmate Coleman's right arm and put my right knee into his right
> shoulder pinning him to the ground as he was actively pushing up against me. Inmate
> Coleman's lower clothing was removed. Handcuffs were removed from Inmate Coleman,

1    and I controlled his right arm articulating it above his head and removing his upper
      clothing. I then articulated Inmate Coleman's right arm to the small of his back and
2    exited the cell.

3    Dkt. 49.

4        A staff incident report completed by Defendant Arias states that:

5            On 08/10/2024, at approximately 1435 hours, New Book, Inmate Coleman,
      Travis Clinton B/A #2024-009833, arrived at King county Jail (KCJ) with Seattle Police
6    Department for one count of felony malicious mischief, two counts of felony harassment
      and one count of felony harassment with the domestic violence label. Inmate Coleman
7    arrived at KCJ via gurney with American Medical Response (AMR.) Inmate Coleman
      was previously declined due to an altered mental status.
8            During the initial pre-booking assessment, Inmate Coleman answered the
      medical questions. Jail Health Services (JHS) Nurse Marina medically evaluated and took
9    Inmate Coleman's vital signs and determined that he was clear to stay in our custody.
      Nurse Marina told Inmate Coleman that he was good to stay in our custody and Inmate
10   Coleman replied to her "I hope you die." Sergeant Robinson asked Inmate Coleman if he
      was going to cooperate with the dress out procedure and remove his clothing on his own
11   once the gurney soft restraints were removed or if he would need assistance in removing
      his clothing, Inmate Coleman replied with "no, I will violently assault you, you can bet
12   your life on it, faggot." Inmate Coleman was transported to side cell #9 via gurney. Once
      in front of the cell, Sergeant Robinson asked Inmate Coleman one more time if he was
13   going to cooperate with the dress-out procedure, but Inmate Coleman replied with "I will
      kill all of you."
14           Sergeant Robinson gave directives on how to safely remove Inmate Coleman
      from the gurney soft restraints. I released Inmate Coleman's right hand from the soft
15   gurney strap. Inmate Coleman's upper body was leaned forward to a sitting position. I
      slowly rotated Inmate Coleman's right hand and placed it behind his back. Officer Merritt
16   applied mechanical wrist restraints on Inmate Coleman's wrists. Inmate Coleman's ankles
      were released from the gurney soft straps and Sergeant Robinson directed him to stand
17   up. I placed my left hand on Inmate Coleman's right triceps and Officer Merritt and I
      soft-hand escorted him inside cell #9. Inside the cell, I directed Inmate Coleman to face
18   the back wall of the cell at all times, but he started to tense up his right arm and attempted
      to turn towards me. I instructed Inmate Coleman to remain facing the wall, but he
19   star[t]ed to push his body backwards towards Officer Merritt and me. Inmate Coleman
      then started to actively resist Officer Merritt and me by trying to pull his arms away from
20   our grasp. Inmate Coleman was able to stand up on the bench inside the cell. I still had
      control of Inmate Coleman's right arm. Officer Merritt and I were able to support Inmate
21   Coleman's upper body weight and brought him down to the bench. Once standing on the
      floor, Officer Merritt and I supported Inmate Coleman's upper body weight and Sergeant
22   Robinson and Officer Grant grasped Inmate Coleman's ankles and pulled backwards in
      order to place Inmate Coleman in the prone position.
23           Inmate Coleman continued to actively resist Sergeant Robinson and Grant's effort
      to secure his legs. I transitioned to Inmate Coleman's legs and Officer Merritt transitioned
      to my previous position on Inmate Coleman's right arm. I was able to place both Inmate
      Coleman's legs on the floor and I placed my right leg on the back of Inmate Coleman's
      hamstrings, and I used my left hand to apply pressure on Inmate Coleman's feet to secure

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 7

1    them against the floor. Once I had full control of Inmate Coleman's legs, I removed
     Inmate Coleman's lower body clothing by lowering it towards his ankles.

2            Sergeant Robinson placed a clean red uniform on Inmate Coleman's buttocks for
     privacy. I secured Inmate Coleman's legs with a figure four leg lock. I placed Inmate

3    Coleman's right foot in the back of his left knee, I then bent Inmate Coleman's left leg at
     the knee, securing Inmate Coleman's right foot under his left leg. I placed feet on the

4    ground for body support and I used my knees to apply light pressure on Inmate
     Coleman's legs to secure them against the floor. Sergeant Robinson removed the

5    mechanical wrist restraints from Inmate Coleman's wrists and Officers Merritt and Grant
     removed Inmate Coleman's upper body clothing. Officers Merritt and Grant rotated

6    Inmate Coleman's hands and placed them in the small of his back. I took control of
     Inmate Coleman's hand and apply pressure on them to secure them against his back. At

7    this moment I had control of all for [sic] Inmate Coleman's extremities. Sergeant
     Robinson instructed Inmate Coleman to remain on the floor until the door was closed.

8    Sergeant Robinson and Officers Merritt and Grant exited the cell. I released Inmate
     Coleman's upper and lower extremities and backed out of the cell. Cell #9 door was
     closed without further incident.

9    Dkt. 51.

10           The declaration submitted by Defendant Robinson states that:

11           On August 10, 2024, Mr. Coleman was brought to the pre-booking area on a
     stretcher by AMR personnel and officers from the Seattle Police Department. During the

12   pre-booking process and medical screening, Mr. Coleman became verbally assaultive
     towards staff. When Mr. Coleman refused to answer questions, I responded to the pre-

13   booking counter. When Mr. Coleman stated he would not cooperate and would fight the
     officers, I requested that Officer Cordero-Nieves take video of Mr. Coleman and handed

14   her a department issued cell phone.
             …

15           The video shows officers trying to de-escalate Mr. Coleman and giving him the
     opportunity to change out of his street clothes and into the jail uniform on his own. When

16   officers placed Mr. Coleman in the cell, he jumped up on a bench that is approximately
     two feet off the ground and had to be forcefully pulled down off of it. When Mr.

17   Coleman continued to refuse to assist with his dress out into the jail uniform, officers
     forced Mr. Coleman onto the floor, which resulted in Mr. Coleman's legs temporarily

18   going in opposite directions until the officers could move Mr. Coleman's left leg from the
     front of his body to the back. While officers did remove Mr. Coleman's clothing, they did
     not forcefully redress him in the jail uniform due to his highly agitated state.

19           After approximately ten minutes, I went back to the door of the cell to check on
     Mr. Coleman, who by that time had put on his jail uniform. I attempted to ask Mr.

20   Coleman if he needed anything but Mr. Coleman continued to yell threats at me, such as
     stating that he was going to kill me because in the jail "nothing will happen" if he did. At

21   no time did Mr. Coleman ask for medical assistance or to see a nurse, despite his cell
     being located directly across from the medical station and within his direct line of sight.

22   Dkt. 50. Defendant Robinson also states that he took photographs of Defendant Coleman when

23   he spoke to him and those photographs are also submitted in support of Defendants' motion. *Id.*

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 8

1

The declaration submitted by officer Gertrudiz Codero-Nieves states, in relevant part:

2

> On August 10, 2024, during the pre-booking process and medical screening,
> plaintiff became verbally assaultive towards staff. When Mr. Coleman refused to answer
> questions, Sgt. Robinson responded to the pre-booking counter. When Mr. Coleman
> stated he would not cooperate and would fight the officers, Sgt. Robinson requested that I
> take video of plaintiff and handed me a department issued cell phone. I then recorded the
> interaction between plaintiff and other officers.
> I asked Mr. Coleman if he needed to see the nurse. I then handed the phone back
> to Sgt. Robinson.

3

4

5

6

Dkt. 52.

7

The video submitted by Defendants shows Plaintiff on a gurney with two American

8

Medical Response ("AMR") personnel and four jail officers around the gurney. *See* Dkt. 55, Ex.

9

A (DVD containing video of incident). One of the officers can be heard informing Plaintiff that

10

they are going to get him inside his cell "and then we're going to get your clothes from you, ok?"

11

*Id.* Plaintiff responds "Are you? You better hope so. You bet your life on it you won't. You bet

12

your fucking life on it you fat fucking faggot." *Id.* As Plaintiff is being moved on the gurney

13

down the hall, another officer can be heard telling Plaintiff "he wants you to do it, that's what he

14

said." *Id.* Plaintiff responds "That's right that's what he said. Try to get my clothes off. You

15

don't understand that murder in jail … that's not a crime." *Id.* One of the officers responds that

16

"it is." *Id.* Plaintiff then responds, "you think it is, but I could kill each one of you if you put your

17

hands on me." *Id.*

18

The gurney is then stopped in front of Plaintiff's cell. *Id.* An officer can be heard

19

instructing Plaintiff to sit up and then the officers can be seen removing Plaintiff's arms and legs

20

from the gurney straps and placing mechanical wrist restraints on Plaintiff, securing his hands

21

behind his back. *Id.* The officers then help Plaintiff stand up from the gurney and escort Plaintiff

22

into the cell with one officer on either side of Plaintiff holding his upper arms and two officers

23

walking behind Plaintiff. *Id.* An officer can then be heard telling Plaintiff three times to face the

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 9

back wall of the cell. *Id.* Plaintiff can then be seen to try to turn to his right and begin pushing his body backwards into the officers holding his arms. *Id.* Plaintiff can then be seen to step up on the bench at the back of the cell with his left leg in an attempt to pull himself away from the officer's grasp. *Id.* The four officers, two holding Plaintiff's upper arms and two holding him at his wrists, are able to pull Plaintiff back down from the bench to a standing position and then as Plaintiff actively struggles and resists, his left leg still reaching towards the bench, the officers lift his body up and put Plaintiff's on the floor on his stomach. *Id.* However, due to Plaintiff's tensing his legs and body, resisting and extending his left leg towards the bench, his legs go in opposite directions for several seconds with his left leg getting stuck extended in front of his body as his torso his placed on the floor and his right leg first extending back behind his body and then bending underneath his body. *Id.*

One officer can be heard to instruct another officer to "get his leg out from under him" and one of the officers at the back of the cell behind Plaintiff pulls Plaintiff's extended left leg around towards the back of his body. *Id.* An officer can be heard telling Plaintiff to "lay flat on your stomach." *Id.* Plaintiff's extended left leg briefly gets stuck on the base of the toilet as the officer tries to move it from the front to the back of Plaintiff's body, but the officer is able to bend Plaintiff's left leg to move it around the toilet. *Id.* A second officer moves Plaintiff's right leg out from under his body so that both of Plaintiff's legs are parallel extended behind his body which is prone with Plaintiff lying on his stomach. *Id.* The officer controlling Plaintiff's right leg then kneels on both of Plaintiff's lower legs/calves to secure his legs and pulls his pants and underpants down towards his ankles and then releases Plaintiff's legs briefly to pull his pants and underpants all the way off. *Id.* Another officer then places a red jail uniform over Plaintiff's

1    buttocks. *Id.* The officer holding Plaintiff's legs then places Plaintiff's right foot in the back of

2    his left knee and bends his left leg at the knee to secure his right foot under his left leg. *Id.*

3          The officer on the left towards the front of Plaintiff's body can be seen placing his knee

4    in the area of Plaintiff's left side to keep his upper body under control and can be heard telling

5    Plaintiff "sir we're going to need you to relax, do not tense up, we're going to remove your

6    clothes for you OK and we're gonna give you a jail uniform." *Id.* Another officer now standing

7    on Plaintiff's right side then removes Plaintiff's handcuffs. *Id.* The officer controlling Plaintiff's

8    left arm and side then stands up telling Plaintiff again to relax and let them guide his hands and

9    that they are going to put his hands out in front of him and remove his shirt. *Id.* The actions of

10   the two officers now toward the front of Plaintiff's body are somewhat obscured for a short

11   period at this point but they appear to be removing Plaintiff's shirt from his upper body as the

12   officer on Plaintiff's right arm side then hands another officer Plaintiff's shirt. *Id.*

13         The officer on Plaintiff's left arm side then tells Plaintiff to put his hands back behind his

14   back and the officer on the right arm side can be seen guiding Plaintiff's arm back behind his

15   back. *Id.* The officer controlling Plaintiff's legs then also holds Plaintiff's wrists behind his back.

16   *Id.* The officer on Plaintiff's right arm side then tells Plaintiff to stay down on the ground until

17   the door closes. *Id.* The officers then leave the cell with the officer holding Plaintiff's arms and

18   legs telling Plaintiff not to jump up and then releasing Plaintiff and departing the cell last. *Id.*

19   The door to the cell is closed and then the officer holding the video camera asks Plaintiff through

20   the cell door twice if he needs to see the nurse. *Id.*

21         The medical record from July 10, 2019, reflects that Plaintiff sustained a neck injury

22   during an assault in 2014 and subsequently underwent a discectomy at C-5 and a C5-6 fusion.

23   Dkt. 48 at 36 (Ex. F). The medical record from August 10, 2024, dated several hours after the

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 11

incident, indicates that Plaintiff denied acute medical, dental and mental health concerns and that he "ambulat[ed] independently with [a] steady gait." *Id.* at 38-39. The record also reflects a diagnosis of cervicalgia, cervical radiculopathy, chronic pain and several other diagnoses. *Id.* The record reflects that Plaintiff was placed in the side cell for being uncooperative at pre-booking, that he had been kicking the cell door and that Plaintiff was intermittently agitated and uncooperative, but also redirectable after long periods of active listening. *Id.*

The medical record from August 11, 2024, indicates that Plaintiff submitted "a kite c/o that was assaulted by CO last night and c/o pain in left thigh...Pt reports 'I have a huge knot on the back of my left leg.'" *Id.* at 41-42. The record reflects that Plaintiff "ambulates in an upright position with a steady gait" and with respect to his left thigh "ROM intact, skin intact, no swelling present, no bruise present, able to extend and flex leg." *Id.*

The interrogatory responses from Defendants Merritt, Robinson and Arias state that they were unaware of Plaintiff's "mental health and physical disability" at the time of the incident. Dkt. 48 at 5-28.

The letter submitted by Plaintiff in response to Defendants motion is unsworn and states only that he is not sure how to respond to Defendants' motion, that his case should not be dismissed, that he believes he should have appointed counsel, and that he believes the assigned Magistrate Judge should have appointed him counsel and should have been removed for denying him counsel.[1]  Plaintiff's complaint is also unverified – it does not contain a sworn statement declaring under penalty of perjury, that the allegations are true and correct pursuant to 28 U.S.C. § 1746.[2]

---

[1] Plaintiff's letter does not directly address or object to any of the evidence submitted in support of Defendants' motion for summary judgment.

[2] 28 U.S.C. § 1746 states, in relevant part:

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 12

**DISCUSSION**

Defendants contend they are entitled to summary judgment because no genuine issue of material fact exists regarding Plaintiff's claims in Count I and that they are further entitled to qualified immunity. Dkt. 47.

A.    *Excessive Force*

Plaintiff alleges Defendants Merritt, Arias and Robinson used excessive force against him. Dkt. 5. The Fourteenth Amendment Due Process Clause protects pretrial detainees from excessive force. *Kingsley v. Hendrickson,* 576 U.S. 389, 393 (2015). To prevail on such a claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case,'" without regard to the officers' underlying intent or motivation. *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Court must weigh the circumstances from the viewpoint of a reasonable officer at the scene and "account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional

---

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: … (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
(Signature)".

1    security." *Id.* (internal quotation and citation omitted). In assessing reasonableness, the Court

2    may consider "the relationship between the need for the use of force and the amount of force

3    used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the

4    amount of force; the severity of the security problem at issue; the threat reasonably perceived by

5    the officer; and whether the plaintiff was actively resisting." *Id.*

6          Here, the evidence, viewed in the light most favorable to Plaintiff, shows that Defendants

7    did not use excessive force against Plaintiff. The evidence shows that while Plaintiff was

8    restrained on the gurney, jail staff informed Plaintiff that they needed to "get Plaintiff's clothes

9    from him." Dkt. 55, Ex. A. One of the officers indicated to Plaintiff that they wanted him to

10   remove his own clothes. *Id.* Plaintiff was verbally aggressive in response, cursing and

11   threatening physical harm to the jail staff if they put their hands on him or attempted to take his

12   clothes. *Id.* The evidence shows that Plaintiff was removed from the gurney restraints, put in

13   handcuffs, and escorted into the cell by Defendants Arias, Merritt, Robinson and non-defendant

14   Grant. Dkts. 45, 50, 51, 55, Ex. A. Once in the cell Defendant Arias instructed Plaintiff to face

15   the back wall, but Plaintiff began to actively resist the officers, pushing his body back against

16   them. *Id.* Plaintiff then stepped up onto the bench with his left foot in an attempt to evade the

17   grasp of the officers. *Id.*

18         The four officers, two holding Plaintiff's upper arms (Merritt and Arias) and two holding

19   him at his wrists (Robinson and Grant), were able to pull Plaintiff back down from the bench to a

20   standing position and then as Plaintiff actively struggled and resisted, his left leg still reaching

21   towards the bench, the officers lifted his body up and placed Plaintiff on the floor on his

22   stomach. *Id.* However, due to Plaintiff's tensing his legs and body, resisting and extending his

23   left leg towards the bench, his legs went in opposite directions for several seconds with his left

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 14

1    leg getting stuck extended in front of his body as his torso was placed on the floor while his right

2    leg first extended back behind his body and then bent underneath his body. *Id.* Defendant

3    Robinson then moved Plaintiff's left leg to the back of his body and Defendant Arias kneeled on

4    Plaintiff's lower legs/calves to secure his legs while he removed Plaintiff's pants and underwear.

5    *Id.* Defendant Arias then placed Plaintiff's right foot in the back of his left knee and bent his left

6    leg at the knee to secure his right foot under his left leg and kneeled on Plaintiff's legs to secure

7    them. *Id.* Defendant Robinson removed Plaintiff's handcuffs and Defendant Merritt and non-

8    Defendant Grant moved Plaintiff's arms above his head and removed his shirt. *Id.* Defendants

9    Merritt and non-Defendant Grant then moved Plaintiff's hands behind his back and Defendant

10    Arias held Plaintiff's wrists in place behind his back. *Id.* The officers then left the cell with

11    Defendant Arias being the last to leave. *Id.*

12         The evidence shows Defendants' use of force was proportional to the need for that force.

13    Plaintiff was combative engaging in verbal threats to physically harm the officers and then

14    engaging in active physical resistance when officers attempted to secure him in his cell and

15    change him out of his clothes and into a jail uniform.

16         The evidence presented by Defendants also indicates that Plaintiff did not sustain a

17    significant injury. Defendants submit evidence that Plaintiff did not request medical assistance

18    immediately after the incident and that he was alert and standing at least ten minutes following

19    the incident. Dkt. 50. The medical records show that several hours after the incident Plaintiff

20    denied acute medical, dental and mental health concerns and that he "ambulat[ed] independently

21    with [a] steady gait." Dkt. 48 at 38-39. The medical record from the day after the incident

22    indicates that Plaintiff complained of pain and a knot in the back of his left leg but that on

23    examination Plaintiff "ambulate[ed] in an upright position with a steady gait" and with respect to

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 15

1    his left thigh the record reflects "ROM intact, skin intact, no swelling present, no bruise present,

2    able to extend and flex leg." *Id.* at 41-50. Furthermore, Defendants' evidence reflects the cervical

3    injury and surgery Plaintiff references in the complaint occurred several years before this

4    incident and that Defendants were unaware of any physical disability. *Id.* at 36; Dkt. 48 at 8-31.

5    Furthermore, to the extent Plaintiff was injured, the evidence shows it was in the context of

6    officers using proportional force to control Plaintiff in direct response to Plaintiff's efforts to

7    physically resist the officers.

8           The evidence also shows that officers made efforts to temper the amount of force by

9    providing several verbal instructions and warnings to Plaintiff including instructing him to face

10    the wall, to stop tensing and to relax his body and informing him when they were going to

11    remove his clothes and his handcuffs. Dkt. 55, Ex. A.

12           A reasonable officer at the scene could reasonably perceive Plaintiff, who was actively

13    physically resisting and had verbally threatened violence against jail staff, posed a threat to jail

14    staff and jail security. The evidence shows there is no genuine issue of material fact regarding

15    whether Defendants violated Plaintiff's Fourteenth Amendment rights.

16           As noted above, the letter submitted by Plaintiff in response to Defendants motion is not

17    sworn or attested under penalty of perjury and states only that he is not sure how to respond to

18    Defendants' motion, that his case should not be dismissed, that he believes he should have

19    appointed counsel, and that he believes the assigned Magistrate Judge should have appointed him

20    counsel and should have been removed for declining to appoint him counsel.[3] Dkt. 56. Plaintiff's

21

22

23

---

[3] The Court notes that the assigned Magistrate Judge, the Hon. Brian A. Tsuchida, denied Plaintiff's two prior motions to appoint counsel in this case finding Plaintiff failed to show extraordinary circumstances in that Plaintiff had been able to articulate his claims, his claims were not complex, and he had not shown a likelihood of success on the merits. Dkts. 8, 26. Plaintiff them moved to recuse the Judges assigned to his case based on the denial of his requests for counsel. Dkt. 30. That motion was denied by the

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 16

1   complaint is also unverified – it does not contain a sworn statement declaring under penalty of

2   perjury, that the allegations are true and correct pursuant to 28 U.S.C. § 1746. As such, the Court

3   cannot consider the complaint or the letter as evidence in opposing defendant's motion for

4   summary judgment. *See Lew*, 754 F.2d at 1423; *Hernandez*, 343 F.3d at 1112.

5          Even if the Court were to consider the complaint and Plaintiff's letter as evidence, they

6   fail to raise a genuine issue of material fact considering the video and other evidence presented

7   by Defendants. The video presented by Defendants, in particular, refutes the allegations of

8   Plaintiff's complaint regarding Defendants' alleged use of excessive force. *See Scott*, 550 U.S. at

9   380-81 (finding the court below erred in denying defendants' motion for summary judgment

10  where video evidence completely contradicted and discredited plaintiff's version of events such

11  that no reasonable jury could believe him).

12         In sum, considering the evidence as a whole, Plaintiff has not shown a genuine issue of

13  material fact exists regarding whether the force used by Defendants was objectively

14  unreasonable. Accordingly, Defendants' motion for summary judgment is granted as to the

15  excessive force claim.

16  B.     *Conditions of Confinement*

17         Plaintiff also makes generalized assertions in Count I that his cell floor was dirty, that he

18  was not given toilet paper or food for 18 hours and that he was not given socks, shoes or sandals

19  for four days. Dkt. 5. It is not clear whether Plaintiff intends to raise separate constitutional

20  claims with respect to these allegations. However, to the extent Plaintiff intends to do so, these

21  claims are also dismissed for the reasons below.

22

23

---

undersigned Judge and referred to the Chief District Court Judge for consideration. Dkt. 31. Chief District
Court Judge David G. Estudillo subsequently affirmed the denial of recusal. Dkt. 34.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 17

A pretrial detainee has a right, pursuant to the Due Process Clause of the Fourteenth Amendment, to be free from punishment prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "[P]re-trial detainees are entitled to 'adequate food, clothing, shelter, sanitation, medical care, and personal safety.'" *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996) (*overruled on other grounds*) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)). To support a claim of unconstitutional conditions of confinement against an individual defendant, a pretrial detainee must show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).[4]

Whether the conditions and conduct rise to the level of a constitutional violation is an objective assessment that turns on the facts and circumstances of each particular case. *Id.* That said "a de minimis level of imposition" is insufficient to rise to the level of a constitutional violation. *Bell*, 441 U.S. at 539 n.21. Further, the " 'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (quoting *Daniels v.*

---

[4] Previously, "all conditions of confinement claims were analyzed under a subjective deliberate indifference standard whether brought by a convicted prisoner under the Eighth Amendment or pretrial detainee under the Fourteenth Amendment." *Gordon*, 888 F.3d at 1122-23 (citing *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242-43 (9th Cir. 2010)). Although it does not appear the Ninth Circuit has expressly extended the objective deliberate indifference standard to all pretrial detainee conditions of confinement claims beyond a denial of medical care, failure-to-protect, and to excessive force claims, the decision in *Gordon* strongly suggests it will do so. *See Gordon*, 888 F.3d at 1120, 1124, and 1124 n.2 (citing *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017) (extending objective deliberate indifference standard to all pretrial detainee conditions of confinement claims)).

1    *Williams*, 474 U.S. 327, 330-31 (1986)). A plaintiff must "prove more than negligence but less

2    than subjective intent—something akin to reckless disregard." *Id.*

3        Here, Plaintiff fails to adequately allege or submit evidence that the conditions alleged

4    put the plaintiff at substantial risk of suffering serious harm. Furthermore, in order to state a

5    claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing how individually named

6    defendants caused, or personally participated in causing, the harm alleged in the complaint.  *See*

7    *Leer*, 844 F.2d at 633; *Arnold*, 637 F.2d at 1355. Sweeping conclusory allegations against an

8    official are insufficient to state a claim for relief. *Leer*, 844 F.2d at 633. In this case, Plaintiff fails

9    to adequately link any of his allegations regarding the alleged conditions to any named

10   Defendant. He does not allege that he informed any of the individual Defendants of the

11   challenged conditions or that Defendants were aware, or should have been aware, of these

12   conditions, or that Defendants made an intentional decision to subject him to the conditions and

13   failed to take reasonable available measures to abate a substantial risk of serious harm to

14   Plaintiff.

15       Furthermore, Defendants submit evidence in the form of their interrogatory responses

16   that, to their knowledge, Plaintiff was either given food or they did not recall Plaintiff asking for

17   food; that they do not know why Plaintiff did not have toilet paper or that they do not recall him

18   requesting toilet paper; that cells in the booking area are cleaned every shift which equates to at

19   least three times a day; and that they do not know why Plaintiff was not given shoes or sandals

20   for several days but that in some instances detainees are not given sandals immediately if they

21   are resistant because they will hit the door with them. Dkt. 48 at 5-28. Plaintiff fails to present

22   any evidence to contradict this evidence presented by Defendants or to otherwise show that the

23   individually named Defendants violated his constitutional rights.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 19

Accordingly, Defendants are entitled to summary judgment and dismissal of these claims as well.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 47) is granted, Plaintiff's remaining claims – contained in Count I – are dismissed with prejudice. As all other claims – Counts II and III –  were previously dismissed and no claims remain in this action, the Clerk is directed to close the case.

The Clerk shall provide copies of this order to Plaintiff and counsel for Defendants.


DATED this 21st day of August 2025.



John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 20